The STATE of Ohio, Appellee,

v.

DENIS, Appellant.

[Cite as *State v. Denis* (1997), 117 Ohio App.3d 442.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–96–027.

Decided Jan. 17, 1997.

Mark Mulligan, Ottawa County Prosecuting Attorney, and Dawn M. Schiets, Assistant Prosecuting Attorney, for appellee.

Michael J. Antonini, for appellant.

*Per Curiam.*

This case is before the court on appeal from a judgment of the Ottawa County Municipal Court, which, after a jury trial, found defendant-appellant, Alex L. Denis, guilty of one count of domestic violence in violation of R.C. 2919.25(C). From that judgment, appellant now raises the following assignment of error:

"The trial court erred in denying appellant his right to compulsory process as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Constitution of the state of Ohio, and to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution."

The relevant facts of this case are as follows. On February 16, 1996, Pamela Hendrix swore out a complaint charging appellant, her former husband, with one count of domestic violence. The complaint was filed in response to a confrontation that occurred that day between appellant, Hendrix, and their seventeen-year-old son Robert. Subsequently, the lower court appointed counsel to represent appellant in those proceedings; however, irreconcilable differences arose between appellant and counsel and appellant chose to represent himself in the municipal court proceedings.

On March 4, 1996, appellant filed a motion for an order compelling the clerk of courts to issue subpoenas to the Clerks of the Ottawa County Municipal Court and the Ottawa County Court of Common Pleas, and the "records persons" of the Port Clinton Police Department, the "Port Clinton Ottawa County Sheriff's Department," and the "Marblehead Ottawa County Sheriff's Department." On

March 5, 1996, the lower court filed a judgment entry denying appellant's request and specifically stating that appellant's request contained insufficient information to grant the requested relief. However, on March 6, 1996, appellant filed praecipes for subpoenas *duces tecum* in the lower court directing the clerk to issue subpoenas to Rebecca Szilag, Clerk of the Ottawa County Municipal Court; the Port Clinton Police Records Clerk; Shirley Missig, Clerk of the Ottawa County Common Pleas Court; the "Ottawa County Danbury Sheriff's Records Clerk"; and the Ottawa County Sheriff Records Clerk. The praecipes further requested that the clerks bring records from cases pending in the courts regarding appellant, Pamela Hendrix, and her husband, Ron Hendrix, requested police reports filed in those cases, and requested that the named individuals appear at the trial scheduled for March 8, 1996. The clerk issued the subpoenas and, with the exception of the subpoena for the "Ottawa County Danbury Sheriff's Records Clerk," all were returned as served.

On March 8, 1996, the case proceeded to a jury trial with appellant appearing *pro se.* Robert Denis and Pamela Hendrix testified on behalf of the state. Robert Denis testified that on February 16, 1996 his mother drove him to a driver's education class at the Checkered Flag Driving School in Port Clinton, Ohio. The class was to start at 4:30 p.m. but he and his mother arrived early. Prior to the start of the class, however, appellant also arrived. Robert testified that appellant began screaming at him and his mother, that appellant told Pamela that she had no right to be there, and that appellant said he would either see Pamela in jail or dead. Robert also stated that he feared appellant would physically injure Pamela "because of his past history and because of all the reports he has filed against him and because of all the reports he has filed against my mom * * *." Robert then stated that despite his fear of his father, he left the scene of the altercation with appellant and spent the next two hours driving around with him. Upon cross-examination, Robert testified that he feared appellant would hurt him if he refused to go driving with him. Pamela Hendrix then testified as follows. She stated that her relationship with appellant is very strained, that he has threatened her in the past and that she takes his threats seriously. As to the February 16 altercation, Hendrix's testimony was consistent with that of her son and she stated that she feared appellant would hit her. She further testified, however, that despite her fears, she allowed Robert to go with appellant because that was Robert's choice. She then returned to her mother's house and at approximately 6:30 p.m. Robert returned. That evening, Robert and Pamela went to the police department to file a complaint.

At the conclusion of the state's case, appellant moved for a dismissal, which motion was denied. Appellant then proceeded to present his case. Initially, he called James Reinheimer, Pamela Hendrix's attorney, and Lita Denis, appellant's

mother. Neither of these witnesses testified to any matters relevant to the issues before the lower court. Appellant then called Vickie Ward, the records keeper of the Ottawa County Sheriff's Department, who brought with her the documents requested in the subpoena. The state, however, objected to Ward's testimony on hearsay grounds and moved to quash all of the subpoenas which had been issued on March 6, 1996 at the request of appellant. Appellant argued that the records would establish that Pamela Hendrix had a history of harassing him and that the sheriff's department records were relevant to her motive in the present case and were essential to his defense that she was lying. The court concluded that the subpoena sought inadmissible hearsay evidence and should be quashed. The court further stated that even if appellant could overcome the hearsay rule with an applicable exception, the evidence sought was irrelevant. Appellant made similar arguments in his attempt to call the Clerk of the Ottawa County Court of Common Pleas, the Clerk of the Ottawa County Municipal Court, and the records keeper for the Port Clinton Police Department. The court also quashed those subpoenas. The court further quashed the subpoena directed to the records clerk of the "Ottawa County Danbury Sheriff" because that subpoena was returned unserved with a notation that no such office existed. Accordingly, the following discussion and holding applies only to those subpoenas that were properly served. At the conclusion of the trial, appellant was found guilty of domestic violence and sentenced to thirty days in jail plus a $250 fine, which fine was suspended. From that judgment, appellant now appeals.

In his sole assignment of error, appellant claims that the trial court erred in granting the state's motion to quash his subpoenas and that such error violated his constitutional right to compulsory process. Appellant argues that in quashing his subpoenas, the trial court denied him the right to present a defense. In contrast, the state asserts that the evidence appellant sought to admit, namely police records and reports, are inadmissible hearsay and that appellant failed to provide the trial court with an applicable hearsay exception.

The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provide that a criminal defendant shall have the right to compulsory process to procure the attendance of witnesses in his favor. In *Washington v. Texas* (1967), 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023, the United States Supreme Court described the right to compulsory process as follows:

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the

right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

In so holding, the court equated the right to compulsory process with the other Sixth Amendment rights applicable to the states. *Id.* The right to compulsory process, however, is not unlimited. In *Taylor v. Illinois* (1988), 484 U.S. 400, 410–411, 108 S.Ct. 646, 654, 98 L.Ed.2d 798, 811–812, the court explained:

"The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case."

■ Accordingly, a defendant's right to present his own witnesses to establish a defense is prescribed by the rules of evidence.

Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The trial court ruled that the evidence at issue was hearsay and that even if appellant could establish its admissibility through an exception to the hearsay rule, the evidence was irrelevant. In the trial below, Pamela Hendrix and Robert Denis were the only witnesses to the threats allegedly made by appellant. These witnesses also testified that their relationship with appellant was "rough" and "strained." Moreover, Robert testified that his fear of his father was in part based on appellant's history and all of the "reports" that he and Hendrix had filed against appellant and that appellant had filed against Hendrix. Despite these statements and their asserted fears of appellant, Robert went driving with appellant and Hendrix allowed Robert to drive with appellant immediately following the altercation. Accordingly, the credibility of these witnesses was crucial to appellant's conviction. In attempting to call the records keepers of the various courts and police stations, appellant, though inarticulately, argued that he was trying to establish that Hendrix had a motive to lie about the altercation. That is, he attempted to establish that Hendrix and her husband had a history of harassing appellant. Evid.R. 616 states that "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." In *State v. Williams* (1988), 61 Ohio App.3d 594, 597, 573 N.E.2d 704, 705, quoting from 3 Weinstein, Evidence (1988), Section 607[03], at 607–27, the court stated:

"Because the possible bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying

relationships, circumstances, and influences operating on the witness 'so that, in the light of his experience, he can determine whether a mutation in testimony could reasonably be expected as a probable human reaction.' "

Additionally, we note that Ohio "follows the minority rule and does not require that a foundation be laid as a prerequisite for the introduction of extrinsic evidence of witness bias." *Id.* Accordingly, the trial court erred in quashing the subpoenas and in not allowing appellant to call these witnesses to inquire into whether Hendrix and appellant had previously filed complaints against each other. Such testimony would not go to the truth of the matter asserted, *i.e.*, the validity of those complaints, but would rather be indicative of a bias or prejudice on the part of Hendrix that might taint her credibility. Moreover, R.C. 2919.25(C) reads: "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." Therefore, the state of mind of the victims of domestic violence is an essential element of the crime. Because Robert Denis testified that his fear of his father was in part due to the prior complaints filed against and by appellant, appellant could have inquired of the records keepers as to whether such complaints had ever been filed. Such an inquiry would not be to establish the truth of any complaints but would be relevant to Robert's credibility.

We therefore conclude that the trial court's granting of the state's motion to quash the subpoenas at issue violated appellant's right to compulsory process and was in error. The sole assignment of error is therefore well taken.

On consideration whereof, the court finds that appellant was prejudiced and prevented from having a fair trial and that the judgment of the Ottawa County Municipal Court is reversed. Court costs of this appeal are assessed to appellee.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK, P.J., HANDWORK and GLASSER, JJ., concur.